UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

CHAMBERS OF
THE HONORABLE GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE
MDD_GLSchambers@mdd.uscourts.gov

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
(301) 344-0627 PHONE
(301) 344-8434 FAX



September 15, 2021

Paul R. Schlitz Jr., Esq.
Mering & Schlitz LLC
343 North Charles Street
Baltimore, Maryland 21201

Jillian E. Quick, Esq.
Special Assistant United States Attorney
Social Security Administration
6401 Security Blvd., Room 617
Baltimore, MD 21235

Subject:  *Ray A. v. Saul*
Civil No. GLS 20-01103

Dear Counsel:

Pending before this Court are cross-motions for summary judgment. (ECF Nos. 11, 12). The Court must uphold the decision of the Social Security Administration ("SSA" or "the Agency") if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3) (2016); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig*, 76 F.3d at 589. This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Id.* Upon review of the pleadings and the record, the Court finds that no hearing is necessary. Local Rule 105.6. For the reasons set forth below, I will grant Defendant's motion, and deny Plaintiff's motion.

**I.  BACKGROUND**

Plaintiff received Supplemental Security Income (SSI) benefits as a child after being found disabled due to an anxiety and defiance disorder and ADHD. (Tr. 15, 168, 201). Plaintiff was born in 1998. (Tr. 168). Upon reaching the age of 18 in 2016, consistent with the law, his eligibility for these disability benefits was redetermined. On August 3, 2017, the Commissioner of the Agency determined that the Plaintiff was no longer disabled as of August 1, 2017. (Tr. 15). On May 22, 2018, Plaintiff requested a hearing, which was conducted on March 27, 2019[1] by an Administrative Law Judge ("ALJ"). (Tr. 15, 32-55). On April 24, 2019, the ALJ found that Plaintiff was no longer disabled under Section 1614(a)(3)(A) of the Social Security Act. (Tr. 25). On April 24, 2019, Plaintiff sought review by the Appeals Council of the ALJ's decision. (Tr. 164-167). On March 13, 2020, the Appeals Council denied Plaintiff's request for review, and the

---

[1] There is a discrepancy as to the exact date of the hearing. The transcript largely reflects that March 27, 2019 was the date of the hearing.

*Ray A. v. Saul*
Civil No. GLS 20-01103
September 15, 2021
Page 2

ALJ's decision became the final and reviewable decision of the SSA. (Tr. 1-5). Plaintiff filed a Complaint in this Court on April 29, 2020, seeking remand and reversal of the ALJ's decision. (ECF No. 1).

## II.  ANALYSIS PERFORMED BY THE ADMINISTRATIVE LAW JUDGE

Pursuant to Section 1614(a)(3)(H)(iii) of the Social Security Act, an individual who receives SSI as a child must have his/her disability redetermined upon reaching 18 years of age. To determine whether a person over the age of 18 has a disability, the ALJ engages in the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. *Barnhart v. Thomas,* 540 U.S. 20, 24-25 (2003); *Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015). Typically, the first step involves the assessment of whether a claimant has engaged in substantial gainful activity since the alleged disability onset date. However, this step is not used when redetermining disability at age 18. *Mode v. Saul,* Civ. No. 20-cv-063, 2021 WL 2593809, at *2 (W.D.N.C. Jun. 24, 2021); *see also* 20 C.F.R. § 416.987(b). At step two, an ALJ determines whether a claimant's impairments meet the severity and durations requirements found in the regulations. At step three, an ALJ ascertains whether a claimant's medical impairment meets or equals an impairment listed in the regulations ("the Listings"). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the Listings and meets the duration requirement the claimant is disabled. *See* 20 C.F.R. §§ 416.909, 416.920(d). If a claimant's impairment does not meet the Listings and/or the duration requirement, the sequential analysis continues.

Before considering step four of the sequential evaluation process, the ALJ assesses the claimant's residual functional capacity ("RFC"). A claimant's RFC is the most that a claimant could do despite her/his limitations, through consideration of claimant's "'medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two." *Mascio*, 780 F.3d at 635 (quoting 20 C.F.R. § 416.945(a)). At step four, the ALJ analyzes whether a claimant could perform past work, given the limitations caused by her/his impairments; and at step five, the ALJ analyzes whether a claimant could perform any work that exists in significant numbers in the economy. *Mascio*, *supra*, 780 F.3d at 635.

At steps one through four, it is the claimant's burden to show that he is disabled. *See Monroe v. Colvin*, 826 F.3d 176, 179-80 (4th Cir. 2016). If the ALJ's evaluation moves to step five, the burden then shifts to the SSA to prove that a claimant has the ability to perform work and therefore, is not disabled. *Hunter v. Sullivan*, 993 F.3d 31, 35 (4th Cir. 1992).

Here, the ALJ evaluated Plaintiff's claim by following the sequential evaluation process outlined above. (Tr. 12-25). At step one, the ALJ found that Plaintiff has no past relevant work (Tr. 24), although this step is not used when redetermining disability at age 18. *Mode*, 2021 WL 2593809, at *2. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: attention deficit/hyperactive disorder (ADHD), learning disorder, borderline intellectual functioning (BIF), and bipolar disorder. (Tr. 17). The ALJ found these impairments were severe because they "significantly limit[ed] the [Plaintiff's] ability to perform basic work

activities required by SSR 85-28." (Tr. 17). However, at step three the ALJ also determined that none of Plaintiff's impairments or combination of impairments met or medically equaled one or more of the Listings. (Tr. 17-20). Recognizing those severe impairments, the ALJ next assessed the claimant's RFC. The ALJ determined that the Plaintiff had the RFC to perform a full range of work at all exertional levels as defined in 20 C.F.R. § 416.945(a), but with the following non-exertional limitations:

> he can: understand, remember, or carry out simple instructions, he can interact with the general public, supervisors, coworkers, or peers frequently during an 8-hour workday. He can maintain attention and concentration for two-hour segments over the course of an 8- hour workday. Any time off task during an 8-hour workday can be accommodated by normal breaks.

(Tr. 20). A hearing was held, where a vocational expert ("VE") testified about whether a hypothetical person with the same age, education, and work experience as the Plaintiff with his RFC could perform other work existing in significant numbers in the national economy. (Tr. 24). That hypothetical was also very specific, namely the VE was asked whether the individual could: understand, remember, and carry out very short simple instructions; interact with the general public. . .respond appropriately to changes in the work setting frequently during an eight-hour workday; maintain attention and concentration for two hour segments over the course of an eight-hour workday." (Tr. 49). The VE was also asked if "any time off task during the workday [could] be accommodated by normal breaks." (*Id.*). The VE testified that this hypothetical individual could perform work as an industrial cleaner; hand packager; housekeeper; marker; and production worker. (Tr. 24-25, 49-50). In addition, Plaintiff's counsel asked the VE "if an individual needed frequent reminding, prompting and reminding in order to follow one and two-step instructions on a frequent basis, would that individual be able to maintain employment in any of these jobs?" (Tr. 42). To which the VE responded "if we use the term frequent as in the Dictionary of Occupational Titles, which means up to 2/3 of an eight-hour day, then my response would be no, that would exceed work tolerances." (*Id.*). However, the VE appeared to clarify his/her statement by noting Plaintiff's hypothetical jobs are only impacted if Plaintiff would lose 15% work productivity due to frequently repeating a task. (Tr. 53).

In addition to the hypotheticals, in the written decision, the ALJ referenced medical evidence provided by Plaintiff's therapist, which concluded that Plaintiff had a coherent thought process, thus negating plaintiff's need for frequent prompting and reminding. (Tr. 18). Therefore, adopting the VE's conclusion and the medical evidence in the record, the ALJ determined that Plaintiff could perform other work despite his limitations. (Tr. 25). In sum, the ALJ found that the Plaintiff was not disabled. (Tr. 25).

## III.   DISCUSSION

In requesting summary judgment, Plaintiff contends that the ALJ's RFC determination is erroneous and not supported by substantial evidence for a number of reasons. First, the ALJ failed

*Ray A. v. Saul*
Civil No. GLS 20-01103
September 15, 2021
Page 4

to address the medical opinion evidence of Drs. McDonald and Sarno, and never mentioned Dr. Parente's medical report in finding that Plaintiff was not disabled. Second, the ALJ failed to provide any limitation in the mental RFC that adequately took into account Plaintiff's moderate limitation in concentration, persistence, and pace. (ECF No. 11-1, pp. 6-8).

### A. Medical Opinion Evidence

Plaintiff argues that the ALJ "is required to address all of the medical opinion evidence in the record," and that in this case the ALJ failed to accurately "evaluat[e] medical opinion evidence under the appropriate standard." (ECF No. 11-1, pp. 6-7). Although not entirely clear, Plaintiff appears to specifically assert: (a) that the opinions of Drs. McDonald, Sarno, and Parente should be evaluated as treating physicians' opinions under 20 C.F.R. § 416.927(c)(2); (b) with respect to Dr. McDonald, the ALJ failed to address Dr. McDonald's conclusion that Plaintiff would require frequent prompting and reminding in order to follow 1-2 step instructions; (c) with respect to Dr. Sarno, the ALJ failed to consider Dr. Sarno's 2014 opinion that Plaintiff's condition still functionally equaled the [child] listings; and (c) with respect to Dr. Parente, the ALJ failed to reference Dr. Parente's entire medical report. (*Id.*).

The SSA counters that remand would serve no useful purpose because: (1) Dr. McDonald's opinion was referenced by the ALJ when she discussed Plaintiff's moderate limitation in concentration, persistence and ability to maintain pace; (2) the ALJ's failure to explicitly address Dr. Parente's opinion constitutes harmless error; and (3) Dr. Sarno's opinion was provided under a disability analysis that only applies to children, not adults. Thus, Dr. Sarno's opinion was not necessary to decide whether the Plaintiff was disabled as of August 2017. (ECF No. 12-1, pp. 5-8).

In determining whether substantial evidence supports the ALJ's finding on Plaintiff's RFC, the Court must consider whether the ALJ analyzed all of the "relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). The law is clear that 20 C.F.R. § 416.927 governs an ALJ's evaluation of medical opinion evidence in an SSI case. A medical opinion that is more consistent with the record as a whole, will be given more weight. 20 C.F.R. § 416.927(c)(4). When evaluating the weight to afford a medical opinion, an ALJ considers the following non-exclusive factors:

> (1) whether the source of the information examined the claimant; (2) the treatment relationship between the source and the claimant, including consideration of the length and nature of that relationship; (3) the supportability of the source's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the source is a specialist; and (6) any other factors that tend to support or contradict the opinion.

*See* 20 C.F.R. §§ 416.927(c)(1)-(6)(March 27, 2017); *see also Goldboro v. Comm'r of Social Security*, Civ. No. 14-153, 2014 WL 6893772, at *4 (D. Md. Dec. 4, 2014).

*Ray A. v. Saul*
Civil No. GLS 20-01103
September 15, 2021
Page 5

In addition, an ALJ's RFC determination should include a "narrative discussion describing how the evidence supports each conclusion citing specific medical facts . . . and nonmedical evidence." Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *7 (July 2, 1996). The Fourth Circuit has held that a "proper RFC analysis has three components: (1) evidence; (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019). *See also Petry v. Comm'r, Soc. Sec. Admin.*, No. 16-464, 2017 WL 680379, at *2 (D. Md. Feb. 21, 2017) (ALJ should build "an accurate and logical bridge from the evidence to his conclusion").

    1. The ALJ Explicitly Addressed Dr. McDonald's Findings

Plaintiff argues that "the ALJ did not address Dr. McDonald's conclusion that [Plaintiff] would require frequent prompting and reminding in order to follow 1-2 step instructions," which would have had "the effect of eliminating all hypothetical jobs." (ECF No. 11-1, pp. 6-7). Specifically, Plaintiff appears to assert this argument because the VE had testified that "if we use the term frequent as in the Dictionary of Occupational Titles, which means up to 2/3 of an eight-hour day, then…[the provided hypothetical jobs] would exceed work tolerances." (Tr. 51). The SSA counters that: (1) Dr. McDonald's conclusion was expressly referenced by the ALJ; and (2) the ALJ's RFC finding was consistent with Dr. McDonald's assessment. (ECF No. 12-1, p. 5-6). I agree with the Agency.

In July 2017, Nancy McDonald, Ph.D., conducted a psychological evaluation and Wechsler Adult Intelligence Scale IV ("WAIS-IV") test on Plaintiff and concluded that Plaintiff "required frequent prompting and reminding in order to follow 1-2 step instructions." (Tr. 549). After reviewing the record, I find that Dr. McDonald's conclusion was explicitly addressed by the ALJ when she evaluated Plaintiff's concentration, persistence and ability to maintain pace. However, the ALJ provided the following as factors that negated Dr. McDonald's opinion: (1) Plaintiff's therapist, Dr. Kate Duncan, noted that Plaintiff had a coherent thought process; (2) Plaintiff was not observed to be overly distractable by examiners; (3) Plaintiff failed to take medication to manage ADHD symptoms; and (4) Plaintiff testified that he took care of his two year old sister, played video games and watched history documentaries. (Tr. 18). All of these daily activities required some concentration, persistence and pace.

In addition, Plaintiff's RFC limitation that Plaintiff can only "understand[d], remember[r], and carrying out simple instructions, with the ability to maintain attention and concentration for two-hour segments" is consistent with Dr. McDonald's conclusion that Plaintiff could still perform "simple, rote tasks such as he has done in the past." (Tr. 20, 23, 550). Thus, it is clear that Dr. McDonald's opinion was referenced in the ALJ's decision.

    2. The ALJ's Failure to Address Dr. Parente's Evaluation was Harmless

Next, Plaintiff appears to argue that Dr. Parente's entire report was never addressed in the ALJ's opinion, and subsequently "no findings [were made] on the medical opinions of Dr. Parente." (ECF No. 11-1, p. 6). The SSA counters that explicit consideration of Dr. Parente's opinion would not have changed the outcome in this case. Thus, remand is unnecessary. (ECF

*Ray A. v. Saul*
Civil No. GLS 20-01103
September 15, 2021
Page 6

No. 12-1, pp. 7-8). I do not find Plaintiff's argument persuasive.

I find that the ALJ's failure to explicitly address Dr. Parente's opinion in her decision was harmless error and *Kersey v. Astrue*, 614 F. Supp.2d 679 (4th Cir. 2009), is instructive. In *Kersey*, the claimant argued that the ALJ failed to discuss a state agency consultant's medical opinion. While the ALJ did reference the findings of Dr. Surrusco, a state agency consultant, the ALJ made no mention of the medical opinion of another state agency consultant, Dr. Blount. However, the *Kersey* court concluded that:

> [d]espite the ALJ's failure to discuss and analyze [Dr. Blount's] particular medical opinion, it is important to acknowledge that Dr. Blount's findings are, for the most part, consistent with the ALJ's findings. Thus, consideration of this particular opinion would not have resulted in further limitations to Kersey's residual functional capacity. Therefore, the court is of the opinion that the ALJ's failure to specifically discuss Dr. Blount's opinion constitutes a harmless error.

614 F.Supp. 2d at 696. Thus, *Kersey* stands, in part, for the proposition that an ALJ's failure to address a specific state agency consultant's opinion constitutes harmless error if the ALJ's findings are consistent with the state agency consultant's opinion, and an ALJ's explicit consideration of the consultant's opinion would not lead to a different result.

Analyzing the facts of this case pursuant to *Kersey*, I find that remand is not required. This case is similar to *Kersey*, in several respects. As was the case in *Kersey*, the ALJ here failed to discuss the medical opinion of a state agency consultant, i.e., Dr. Parente. However, the ALJ's findings are not inconsistent with the Dr. Parente's opinion. It is worth noting that Dr. Parente opined that: (1) there was no report of any physical or mental conditions that would keep Plaintiff from working; (2) Plaintiff was capable of accepting supervision and working under time pressures; and (3) Plaintiff had the ability to focus for short periods "but will likely have difficulty focusing for long periods" of time. (Tr. 556-557, 559). In the ALJ's opinion, the ALJ took into account Plaintiff's limitations, and concluded that Plaintiff had to be restricted to carrying out simple instructions, and was capable of maintaining attention and concentration for two hour segments. The ALJ also found that Plaintiff had to take normal breaks during a work day. (Tr. 20-21).

Next, the ALJ considered the medical opinions of other state agency consultants, such as Drs. Bunkley, Walcutt, and McDonald. (Tr. 23). Their opinions were given partial weight, to the extent that they were consistent with the medical record. (Tr. 23). Of note is the fact that Dr. McDonald performed the same WAIS-IV test on Plaintiff as Dr. Parente conducted. (Tr. 549, 566,593). In addition, the ALJ considered Dr. McDonald's evaluation which showed that Plaintiff had a lower functioning ability (lower scores). (Tr. 23). However, the ALJ went a step further and found that Plaintiff was even more limited than Dr. McDonald opined, citing to medical evidence. (Tr. 23-24). The ALJ then accounted for these limitations in fashioning Plaintiff's RFC. (Tr. 20,

*Ray A. v. Saul*
Civil No. GLS 20-01103
September 15, 2021
Page 7

24). Ultimately then, it is clear, that even if the ALJ had explicitly referenced Dr. Parente's opinion, the outcome of this case would remain the same. Thus, the ALJ's failure to address Dr. Parente's opinion constitutes harmless error *See Kersey*.

> 3. <u>Dr. Sarno's Evaluation was Irrelevant to a Determination of Plaintiff's Disability as an Adult</u>

Plaintiff asserts that the ALJ failed to reference Dr. Sarno's finding that Plaintiff's "condition still functionally equaled the child listings in 2014." (ECF No. 11-1, p. 6-7). Specifically, Plaintiff appears to argue that: (1) ALJ's opinion is erroneous, because the ALJ failed to explain how the Plaintiff is now unable to meet any of the listings; and (2) a "treating physician standard" provided under POMS DI 24503.050D8 and 20 C.F.R § 416.927 (2016) applies to Dr. McDonald, Dr. Parente and Dr. Sarno. (*Id.* at 7). Plaintiff avers that POMS DI 24503.050D8 "requires that children's SSI redeterminations get the benefit of the previous treating physician standard if they are born before March 28, 1999." (*Id.*).

The Agency appears to counter that Dr. Sarno's evaluation was conducted under a now-inapplicable child standard. According to the Agency, now that Plaintiff is an adult, medical evaluations must be done under the applicable adult disability standard. (ECF No. 12-1, p. 6). Thus, Dr. Sarno's opinion was not important in determining whether Plaintiff was disabled as of August 2017. In addition, the Agency argues that the record contains medical opinions from Drs. Walcutt and Bunkley, who evaluated Plaintiff under the applicable adult disability standard using more recent records. (*Id.*). I agree with the Agency, as Plaintiff's reliance on POMS DI 24503.050D8 lacks merit.

Dr. Sarno is a state agency child psychiatrist who conducted Plaintiff's continuing disability review ("CDR"). (Tr. 530-535). Dr. Sarno opined that Plaintiff's impairments functionally equaled the Listings and therefore, concluded that Plaintiff was still eligible for disability benefits. (Tr. 530-530). However, Dr. Sarno evaluated Plaintiff in 2014 under the applicable child standard, which is irrelevant to a 2017 assessment of whether Plaintiff is disabled under the adult disability standard. *See* 42 U.S.C. § 1382c(a)(3)(H) (noting that the medical improvement review standard specified in section 1382c(a)(4) does not apply to disability redeterminations at age 18); *see also* SOCIAL SECURITY, https://www.ssa.gov/ssi/text-cdrs-ussi.htm (last visited August, 2021)("if [an individual is] eligible for disability benefits as a child, 2 months prior to attaining age 18," the Agency reviews a case to determine whether a claimant's current medical condition(s) meet(s) the disability criteria applicable to adults); 20 CFR § 416.987(2)(b) ("When we redetermine your eligibility, we will use the rules for adults (individuals age 18 or older who file new applications").

In sum, because Dr. Sarno's evaluation of Plaintiff was conducted under a child standard, rather than the required adult standard for claimants who turn 18, the ALJ did not err by not relying upon Dr. Sarno's opinion.

*Ray A. v. Saul*
Civil No. GLS 20-01103
September 15, 2021
Page 8

> B. The ALJ Reasonably Accounted for Plaintiff's Moderate Impairment in Concentration with a Corresponding Limitation in RFC

Plaintiff contends that the ALJ failed to explain why no limitation in his RFC related to production or pace was necessary given the ALJ's finding that Plaintiff had a moderate limitation in concentration, persistence and pace. Relying on *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), Plaintiff argues that mental RFC is deficient. (ECF No. 11-1, p. 7-8). Plaintiff further asserts that the ALJ's finding that Plaintiff has the ability to maintain concentration for 2-hour periods of time does not satisfy the criteria of SSR 96-8p, and that the ALJ's addition of normal breaks to Plaintiff's RFC is contradictory. (*Id.* at 8). The SSA counters that: (1) the ALJ's decision differs from *Mascio* because the ALJ here, "did not simply limit Plaintiff to simple, routine tasks as was the case in *Mascio*;" and (2) the ALJ explained why the limitations in Plaintiff's RFC were sufficient. (ECF No. 12-1, p. 10). I agree with the Agency.

Social Security Ruling ("SSR") 96-8p provides that:

> in assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

1996 WL 374184 at *7.

In *Mascio*, *supra*, the court found that "[a claimant's] ability to perform simple tasks differs from the ability to stay on task." Thus, only an RFC that addresses a claimant's ability to stay "on task" adequately accounts for that claimant's limitations in concentration, persistence, and pace. 780 F.3d at 638. Relatedly, a hypothetical question posed to a VE that only limits a claimant to "simple, routine tasks or unskilled" work does not adequately account for a claimant's limitation in concentration, persistence, and pace. *Id.* Finally, where an ALJ fails to explain why a claimant's concentration, persistence, and pace limitation does not translate into the claimant's RFC, or the ALJ otherwise fails to discuss a claimant's ability to perform certain functions on a given work day, remand is required. *Id.*

The facts of this case differ from those in *Mascio*. Here, the ALJ did not simply limit Plaintiff to simple, routine tasks. Rather the ALJ found that Plaintiff had the following limitations: Plaintiff could "(1) understand, remember, and carry out simple instructions; (2) . . . interact with the general public, supervisors, coworkers, or peers frequently during an 8-hour workday; and (3) . . . maintain attention and concentration for two-hour segments over the course of an 8-hour workday, [with] any time off task accommodated by normal breaks." (Tr. 20-21). The ALJ

*Ray A. v. Saul*
Civil No. GLS 20-01103
September 15, 2021
Page 9

expressly addressed Plaintiff's ability to stay on task in the RFC finding by noting that Plaintiff "can maintain attention and concentration for two-hour segments." (Tr. 20-21). The ALJ further explained that: the limitations were sufficient in light of Plaintiff's coherent thought process; Plaintiff was not observed to be overly distractable or slow by any of the medical practitioners; Plaintiff did not take medication for his ADHD; and Plaintiff testified that he took care of his two-year-old sister, played video games, watched documentaries, and read. (Tr. 18,23). Moreover, the ALJ's finding that Plaintiff can maintain concentration in 2-hour blocks of time, with normal breaks during an 8-hour work day, satisfies the requirements of SSR 96-8p. Furthermore, the ALJ explained the findings. (Tr. 20-23). Finally, after hearing the hypotheticals that mentioned Plaintiff's limitations, the vocational expert provided a number of unskilled jobs Plaintiff has the ability to perform. (Tr. 24-25). Accordingly, Plaintiff's RFC is also consistent with POMS DI 25020.010B(2)-(3).[2] In sum, I find that the ALJ adequately accounted for Plaintiff's moderate limitations in the RFC that was fashioned.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment, (ECF No. 11), is DENIED and Defendant's Motion for Summary Judgment, (ECF No. 12), is GRANTED. The Clerk of the Court is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely,

/s/
The Honorable Gina L. Simms
United States Magistrate Judge

---

[2] which provides that the basic mental requirement for any job is the "ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure), and for unskilled labor concentration is not critical. *See* POMS DI 25020.010B(2)-(3), *available at* https://secure.ssa.gov/poms.NSF/lnx/0425020010 (last visited July 12, 2021). Moreover, a normal break coincides with the mental requirements of unskilled labor. *See* POMS DI24510.005(C)(2)(b), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510005 (stating "consider an 8-hour workday and a 5 day work week (with normal breaks, e.g., lunch, morning and afternoon breaks) in evaluating the ability to sustain work-related functions").